IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Valda Johnson | : | |
|    3600 Tupelo Court | : | |
|    Woodbridge, VA 22192 | : | |
| | : | |
|    Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | **Jury Demanded** |
| Gordon Hartogensis, Director Pension Benefit | : | |
| Guaranty Corporation (PBGC) | : | |
|    1200 K Street, NW | : | |
|    Washington, DC 20005 | : | |
| | : | |
|    Defendant. | : | |

## COMPLAINT

Plaintiff, Valda Johnson, brings this action alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and the Age Discrimination in Employment Act (ADEA) against her employer, Gordon Hartogensis, Director of the Pension Benefit Guaranty Corporation.

**I.    JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of the instant complaint Pursuant to 28 U.S.C. § 1331 because the plaintiff brings an action arising under the laws of the United States.

2. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391 because the unlawful employment practices were committed and the employment records were maintained, in whole or in part, in this District.

## II.     PARTIES

3.     Plaintiff, Valda Johnson ("Johnson") at all times material to the averments of this Complaint, is a citizen of the state of Virginia and an employee of the Pension Benefit Guaranty Corporation.  Plaintiff serves as an Actuarial Technical Reviewer ("ATR"), 1510-GS-14, in the Benefit Payment Administration Department ("BAPD").

4.     Defendant, Gordon Hartogensis, Director of the Pension Guaranty Corporation ("PBGC"), is a is a United States federally chartered corporation created by the Employee Retirement Income Security Act of 1974 (ERISA) and at all times material to the averments of this Complaint, employed Plaintiff Johnson.

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     Plaintiff has exhausted all administrative remedies. Plaintiff timely sought EEO counseling with an EEO officer within forty-five (45) days of learning of the alleged discriminatory actions. Plaintiff timely filed a formal complaint on August 23, 2016.  PBGC dismissed Plaintiff's complaint without a hearing and entered a final order concerning the same on September 24, 2018, from which Plaintiff timely appealed to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO").  OFO affirmed PBGC's final Order on April 4, 2019.  Plaintiff asserts her Complaint within the regulatory timeframe of 90 days.

## IV.    FACTS

6.     Johnson is employed as an Actuarial Technical Reviewer ("ATR") in PBGC's Benefit Payment Administration Department ("BAPD").  Plaintiff also serves in prominent roles for the Union which is the exclusive bargaining representative for the majority of PBGC

employees - Independent Union of Pension Employees for Democracy and Justice ("IUPEDJ"). During the relevant period, Johnson served as the Union's Vice President.

7.      In her capacity as a Union official, Johnson engaged in significant "protected activity."  Johnson regularly asserted complaints of race, age, and gender discrimination, harassment, and reprisal on behalf of IUPEDJ members as well as on her own behalf.  Johnson also participated in a representative capacity in a number of discrimination EEO adminsitrative claims on behalf of members and some court litigation.

8.      During the relevant period, Johnson also communicated to PBGC's management her belief that African American ATRs were being subjected to disparate treatment in terms of training and advancement opportunities.  Johnson asserted on a number of occasions in 2012 and 2013 that she believed PBGC was purposefully holding African American Actuaries back from obtaining the credentialing, knowledge and experience necessary to be promoted to advanced and supervisory positions within the organization because of their race.

9.      Johnson also sued PBGC for discrimination and the parties resolved the suit by settlement agreement in 2010.  The settlement agreement included provisions which facilitated Johnson's access to training opportunities, including those provided to similarly situated employees, as well as guidelines for rating Johnson's performance.  Johnson also had an active EEO complaint pending when the events concerning her performance appraisal and training arose.

10.     In 2013, Johnson's first-line supervisor was Jeannette Pittman ("Pittman"). However, in April 2013, BAPD Director,  Philip Langham ("Langham"), changed the reporting structure and as a result,  Marjorie Brown ("Brown") became Johnson's immediate supervisor

and rating official.

11. Brown issued Johnson's rating or appraisal for June 1, 2013 to September 30, 2013. Johnson's overall rating was "Exceeds Expectations" or four (4) instead of an "Outstanding" or five (5) rating. The lower performance rating deprived Johnson of an automatic performance award and accordingly compensation. The rating was not consistent with performance rating guidelines or reflective of the level and quality of work actually performed by Johnson.

12. Johnson had significant experience in her position as an ATR, having worked in the position for seven (7) years prior to the subject rating. Johnson and Brown, however, had a long history of acrimony as a result of Johnson's protected activity. Johnson asserted several complaints against Brown for manipulating work assignments, denying training, and issuing improper or invalidated performance ratings. During the rating period, Johnson had an active EEO administrative claim against Brown and Langham concerning harassment. Langham had warned Johnson against continuing to make claims against him and even then-Director, Josh Gotbaum, mentioned Johnson's EEO activity in a meeting.

13. When Brown gave Johnson the rating, she expressed disenchantment with Johnson and stated that Johnson's EEO activity was the reason that Brown herself received a lower performance rating.

14. Langham refused to approve funds for Johnson to attend an actuarial training conference in October 2013. Although Langham contended funds were not available, the contention was not accurate. Johnson used her own funds to attend the training. PBGC did not reimburse Johnson for the payment.

15. Johnson also requested administrative time to study for actuarial examinations. Neither Brown nor Langham approved her request. White, male and significantly younger employees similarly situated to Johnson were given approval for study time and permitted to attend similar or the same trainings.

## V. CLAIMS

### COUNT I - RACE, SEX AND COLOR DISCRIMINATION (Title VII)

16. Plaintiff restates and realleges the allegations of paragraphs one (1) through 15 as if fully set forth herein and further alleges as follows:

17. Defendant denied Plaintiff training opportunities and improperly lowered her performance rating because of Plaintiff's race, sex, and color. Similarly situated employees outside of Plaintiff's class were not similarly treated in terms of their performance ratings.

18. The denial of a fair performance rating or the discriminatory lowering of the rating resulted in loss of compensation to Plaintiff.

19. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

### COUNT II - HARASSMENT BASED ON RACE, SEX AND COLOR (Title VII)

20. Plaintiff restates and realleges the allegations of paragraphs one (1) through 15 as if fully set forth herein and further alleges as follows:

21. Defendant, because of Plaintiff's race, sex and gender, subjected Plaintiff to a

hostile work enviornment. The harassment was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to cause Plaintiff to suffer emotional harm, to include stress and mental anguish.

22. As a direct and proximate result of Defendant's harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

### COUNT III - RETALIATION (Title VII)

23. Plaintiff restates and realleges the allegations of paragraphs one (1) through 15 as if fully set forth herein and further alleges as follows:

24. Plaintiff's supervisor and the decision makers were aware of Johnson's significant protected activity, namely complaints of discrimination and retaliation against Johnson personally, Johnson's litigation history, and complaints of discrimination and retaliation made on behalf of members of the IUPEDJ.

25. As a result of Plaintiff's protected activity, Defendant engaged in conduct which would have dissuaded a reasonable person from complaining, to include retaliatory lowered performance ratings, impacting Plaintiff's compensation, as well as denial of training, which negatively impacted Plaintiff's advancement opportunities.

26. As a direct and proximate result of Defendant's retaliatory conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Plaintiff is entitled to declaratory

relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**COUNT IV - AGE DISCRIMINATION, HARASSMENT AND RETALIATION (ADEA)**

27. Plaintiff restates and realleges the allegations of paragraphs one (1) through 15 as if fully set forth herein and further alleges as follows:

28. Plaintiff's supervisors subjected her to discrimination in terms of lower performance ratings, impacting her compensation, and denial of access to training because of her age and because Plaintiff's supervisors favored significantly younger ATP's over Plaintiff, who is over the age of 40.

29. Plaintiff's supervisors further subjected her to harassment, which was both severe and pervasive and which impacted the terms and conditions of her employment because of her age.  Plaintiff's supervisors also subjected Plaintiff to retaliation because she complained about age discrimination both against her and against the IUPEDJ members she represented.

30. As a direct and proximate result of Defendant's retaliatory conduct, in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**VI.    RELIEF**

Plaintiff requests the following relief:

(1)    An order declaring that Defendant has violated her rights as secured by Title VII of the Civil Rights Act of 1964, as amended and the Age Dicsrimination in Employment Act;

(2) An order enjoining Defendant against continued and further discrimination, harassment and retaliation against Plaintiff;

(3) Compensatory damages in amounts to be determined by a jury;

(4) Appropriate training and administrative time to prepare for actuarial examinations such that Plaintiff's career may be advanced;

(5) Attorney's fees, case expenses and court costs; and

(6) Any other relief determined appropriate.

**JURY DEMANDED.**

Respectfully submitted: July 3, 2019

_____
Eden Brown Gaines #489862
Brown Gaines, LLC
10 G Street, NE
Suite 600
Washington, DC 20002
Main (202) 248-5040
Fax (301) 542-0032
egaines@browngaines.com